IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID DIBENEDETTO, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 1:16-cv-02429-TSC<br>) |
| THE ISLAMIC REPUBLIC OF IRAN | )<br>) |
| AND | )<br>) |
| THE IRANIAN MINISTRY<br>OF INFORMATION AND SECURITY | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

### I. BACKGROUND

This action was filed under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, and arises out of the bombing of the United States Marine barracks in Beirut, Lebanon on October 23, 1983. (ECF No. 1 ("Compl.")). The thirty-five (35) plaintiffs in this action include servicemen killed or injured in the terrorist attack, their estates, and family members. (*Id.*) Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, were served through diplomatic channels on October 18, 2017. (ECF No. 16). Prompted by defendants' failure to answer, and upon affidavit by plaintiffs' counsel, the clerk of the court entered a default against defendants on March 5, 2018. (ECF Nos. 17 and 18.)

1

## II. LIABILITY

On March 6, 2018, plaintiffs' counsel filed a motion for default judgment as to liability, asking this court "to take notice of the liability decisions entered in the related cases of *Peterson v. Islamic Republic of Iran* (*Peterson I*), 264 F. Supp. 2d 46 (D.D.C. 2003) and *Fain v. Islamic Republic of Iran*, 856 F. Supp. 2d 109 (D.D.C. 2012)." (ECF No. 19.) That same day, plaintiffs' counsel moved for the appointment of a special master to consider all issues regarding compensatory damages. (ECF No. 20.) This court granted both motions on September 30, 2019. (ECF No. 25.)

## III. DAMAGES

Damages available under FSIA's cause of action "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). Survivors may recover damages for their pain and suffering, estates of the deceased may recover economic losses stemming from wrongful death to the victims of terrorism, family members may recover solatium for their emotional injury, and all plaintiffs may recover punitive damages. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82-83 (D.D.C. 2010).

Under the FSIA, a "default winner must prove damages in the same manner and to the same extent as any other default winner." *Hill v. Republic of Iraq*, 328 F.3d 680, 683-84 (D.C. Cir. 2003). "A plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'" *Salazar v. Islamic Republic*

*of Iran*, 370 F. Supp. 2d 105, 115-16 (D.D.C. 2005) (quoting *Hill*, 328 F.3d at 681 (internal quotations omitted)). Plaintiffs in this action have demonstrated that defendants' commission of acts of extrajudicial killing and provision of material support and resources for such killing were reasonably certain to—and indeed intended to—cause injury to plaintiffs. *Peterson v. Islamic Republic of Iran* (*Peterson II*), 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

The court has received and reviewed the damage award recommendations of the special master and hereby adopts all facts found by and recommendations made by the special master which conform to the well-established damages frameworks articulated below. *See Peterson II*, at 52-53; *Valore*, 700 F. Supp. 2d at 84-87.

A.  <u>Pain and Suffering</u>

Assessing appropriate damages for physical injury or mental disability depends upon a myriad of factors. Where "death was instantaneous there can be no recovery." *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000) (citation omitted); *see also Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 39 n.4 (D.D.C. 2016) (where plaintiffs "submit[] no evidence . . . showing that either of the [victims suffered any pain and suffering prior to their deaths in the suicide bombings," damages must be denied). Victims who survived a few minutes to a few hours after the bombing typically receive an award of $1 million. *Elahi*, 124 F. Supp. 2d at 113.

For victims surviving for a longer period of time, this court considers "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her

3

life." *Peterson II*, 515 F.Supp.2d at 52 n. 26 (citing *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 59 (D.D.C. 2006)). In *Peterson II*, this court adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages. *Id*. at 54. This approach is not rigidly applied, however, and this court has indicated it will "depart upward from this baseline to $7.5-$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead," *Valore*, 700 F. Supp. 2d at 84, and will "depart downward to $2-$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire." *O'Brien v. Islamic Republic of Iran*, 853 F. Supp. 2d 44, 47 (D.D.C. 2012) (citation and internal quotation marks omitted).

For servicemen suffering emotional, but no physical injury, this court has adopted a general framework for the calculation of pain and suffering damages whereby they are typically "awarded $1.5 million." *Worley v. Islamic Republic of Iran*, 177 F.3d 283, 286 (D.D.C. 2016); *see also Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7 (D.D.C. 2012) (awarding $1.5 million in damages to Marine stationed aboard USS Iwo Jima at time of attack but participated in recovery efforts and suffered from PTSD); *Peterson*, 515 F. Supp. 2d at 56; *Valore*, 700 F. Supp. 2d at 84.

Here, the only departure recommended by the special master is that Adam Webb receive $2 million rather than the $5 million baseline established in *Peterson*

4

and *Valore*. Webb's medical records allude to a "contusion to the left shoulder" and "mild palpatory tenderness over the metatarsal area of the left foot," a "fractured ankle" and "no other injuries." (ECF No. 35 at 5.) The evidence does not suggest that Webb suffered severe or permanent physical injuries as a result of the Beirut bombings. (*Id.*) This court agrees with the special master and adopts the recommendation that Mr. Webb be awarded $2 million in damages for pain and suffering.[1]

### B. Economic Loss

The FSIA establishes a cause of action for economic damages resulting from an act of state-sponsored terrorism. 28 U.S.C. § 1605A. Through detailed economic appraisals, the estates of those servicemen killed in the attack have proven to the satisfaction of the special master, and thus to the satisfaction of this court, the loss of accretions resulting from these wrongful deaths. *See Valore*, 700 F. Supp. 2d at 85 (adopting a special master's recommendation to accept economic loss as calculated through appraisals). The court therefore adopts without modification the special master's recommended damage awards for economic loss.

### C. Solatium

This court developed a standardized approach for FSIA intentional infliction of emotional distress, or solatium, claims in *Heiser v. Islamic Republic of Iran*, 466 F. Supp.

---

[1] Federal Rule of Civil Procedure 53(f)(2) provides that in response to a report of a special master, "[a] party may file objections or motion to adopt or modify no later than 21 days after a copy of the master's order, report, or recommendations is served." Webb did not object to the special master's report, but instead moved this court to adopt the findings. (*See* ECF No. 36)

2d 229 (D.D.C. 2006). In *Heiser*, this court surveyed damages awarded to the family members of the deceased victims of terrorism and determined, based on averages, that "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." *Id*. at 269. Specifically, this court established a framework whereby spouses of deceased victims receive approximately $8 million, while parents receive $5 million and siblings receive $2.5 million. *Id*. *See also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson II*, 515 F. Supp. 2d at 51).

When applying this framework, this court is mindful that "[these numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51,79 (D.D.C. 2010), and that deviations may be warranted when confronted with "evidence establishing an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26-27 (D.D.C. 2011). Conversely, downward departures may be appropriate where the evidence suggests that the relationship between the victim and his family members is attenuated, *Valore*, 700 F. Supp. 2d at 86, or where a claimant fails to "prove damages in the same manner and to the same extent as any other default winner." *Hill*, 328 F.3d at 683. The court adopts without modification the special master's

recommended damage awards for solatium.

### D. Punitive Damages

In assessing punitive damages, courts must balance the concern that "Recurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect . . . ," *Murphy*, 740 F. Supp. 2d at 75, against the need to continue to deter "the brutal actions of defendants in planning, supporting and aiding the execution of [terrorist attacks]." *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 184 (D.D.C. 2010). In furtherance of this goal, this court held that the calculation of punitive damages in subsequent related actions should be tied directly to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy*, 740 F. Supp. 2d at 76. The ratio of 3.44 was established in *Valore*—an earlier FSIA case arising out of the Beirut bombing. *Id*. at 82-83 (citing *Valore*, 700 F.Supp.2d at 52). The court will again apply this same 3.44 ratio, resulting in a total punitive damages award of $281,068,882.24.[2]

### E. Estates of Mabel Rich and Donald Webb

Finally, the court notes that Mabel Rich (mother of servicemember Steve Forrester) and Donald Webb (son of servicemember Adam Webb) are deceased and administrators of their estates are in the process of being appointed. The special master recommends that the awards to the Estates of Mabel Rich and Donald Webb "be held in abeyance until letters of administration reflecting the appointment of [] executor[s]" are

---

[2] Once the award claims of the Estates of Mabel Rich and Donald Webb are excluded, this total figure becomes $261,804,882.24.

filed with the court. (ECF No. 29 at 22; ECF No. 35 at 29.) The court adopts this recommendation.

## IV. CONCLUSION

The court finds defendants responsible for the injuries sustained by the plaintiffs and thus liable under the FSIA for $81,706,070.42 in compensatory damages and $281,068,882.24 in punitive damages, for a total award of $362,774,952.66 as recommended by the special master. (*See* ECF Nos. 29–35.) Excluding the claims of the Estates of Mabel Rich and Donald Webb, this amounts to $76,106,070.42 in compensatory damages and $261,804,882.24 in punitive damages, for a total award of $337,910,952.66.

A separate Order and Judgment consistent with these findings shall be entered contemporaneously.

Date: February 19, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge