**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID DIBENEDETTO, et al., | |
| Plaintiffs/Judgment Creditors, | |
| v. | Case No. 1:16-cv-02429-TSC |
| IRANIAN MINISTRY OF INFORMATION AND SECURITY, et al., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO THE *BENSON* PARTIES' NOTICE**

## I.    INTRODUCTION

The *Benson* Parties' request that this Court "*sua sponte*" vacate its June 2, 2026 Order and Plaintiffs' writ of attachment is unwarranted. The prior exclusive jurisdiction doctrine does not strip this Court of all authority to act, nor does it mandate the extraordinary and prejudicial remedy of vacatur. It counsels that courts should not exercise jurisdiction in a manner that would result in competing disposition over the same property. That concern can be addressed by measures that preserve Plaintiffs' attachment rights. If the Court concludes that the Southern District of New York has prior exclusive jurisdiction, it should either: (i) sever and transfer the claims and proceedings concerning post-judgment attachment of and execution over the Tether cryptocurrency at issue, pursuant to Federal Rule of Civil Procedure 21 and 28 U.S.C. § 1404(a); or (ii) effectively stay these proceedings—through an order that permits Plaintiffs to later file an application for judgment pursuant to D.C. Superior Court Civil Rule 69-I(e)(4)—until the dispute has been resolved in the Southern District of New York.

## II.    BACKGROUND

Plaintiffs are survivors and victims of the 1983 Beirut Marine barracks bombing and their family members. Plaintiffs hold final judgments against the Islamic Republic of Iran and Iranian Ministry of Information and Security awarding $362,774,953 in damages, including $81,706,070.42 in compensatory damages and $281,068,882.24 in punitive damages. *See* Dkt. Nos. 38, 52. Despite obtaining the judgments around six years ago, much of those judgments remains unsatisfied.

In late April 2026, Tether and the U.S. government publicly announced that they had frozen $344 million in cryptocurrency assets linked to Bank Markazi, the Central Bank of the Islamic Republic of Iran. Shortly after, Plaintiffs moved this Court for permission to serve a writ of

attachment on Tether and for alternative service. Dkt. Nos. 59, 60. Unbeknownst to Plaintiffs at the time they sought this relief, the *Benson* Parties were seeking recovery of these same assets in the Southern District of New York through a case that they had filed under seal (but which has now been unsealed), *Benson v. Islamic Republic of Iran*, 1:26-cv-02327 (S.D.N.Y.).

This Court granted Plaintiffs permission to serve the writ and to provide alternative notice. Dkt. No. 61 and June 3, 2026 Minute Order. Plaintiffs then served Tether on June 2, 2026 and provided notice of the writ to Iran. *See* Dkt. Nos. 69, 70. Following service of the writ on Tether, the *Benson* Parties filed on June 3, 2026 a Notice of Attachment and Prior Exclusive Jurisdiction in the Southern District of New York. Although the *Benson* Parties have not sought to intervene in this case or filed any motion, they request through their "notice" that the Court "*sua sponte* vacate its Order entered at Dkt. No. 61, and vacate or quash any writ issued pursuant to that Order." Dkt. No. 68 at 4 ("Notice").

### III.    DISCUSSION

If the Court determines that the Southern District of New York has prior jurisdiction, Plaintiffs request that the Court sever and transfer the attachment proceedings under Federal Rule of Civil Procedure 21 and 28 U.S.C. § 1404(a), thereby allowing a single court to resolve all competing claims while preserving Plaintiffs' writ and priority. In the alternative, the Court should stay further proceedings in this Court—by tolling or extending the deadline for Plaintiffs to seek judgment against the garnishee—pending resolution of proceedings in the Southern District of New York.

Whichever the path, the writ previously granted by the Court need not be vacated. The prior exclusive jurisdiction doctrine is a prudential rule of abstention that does not compel vacatur and whose purpose can be satisfied through the relief Plaintiffs request. Each form of requested

relief avoids the possibility of conflicting exercises of jurisdiction while still safeguarding Plaintiffs' rights.

**I.    If the Court Concludes that the Southern District of New York Has Prior Exclusive Jurisdiction, It Should Sever and Transfer the Claims and Proceedings Concerning Post-Judgment Attachment and Execution.**

This Court should sever the claims and proceedings concerning post-judgment attachment of and execution on the Tether cryptocurrency from the remainder of this action pursuant to Federal Rule of Civil Procedure 21 and transfer those claims to the Southern District of New York under 28 U.S.C. § 1404(a). Severance and transfer is the appropriate mechanism where, as here, a discrete claim in an existing action implicates *res* before another court. *Cf. M.M.M. ex rel. J.M.A. v. Sessions*, 319 F. Supp. 3d 290 (D.D.C. 2018) (severing and retaining jurisdiction over claim seeking judicial review of an order of removal and transferring remaining claims to the district in which a judge had recently issued a class wide preliminary injunction over the same class members and substantially similar claims).

Under Rule 21, "[t]he court may . . . sever any claim against a party." Fed. R. Civ. P. 21. District courts have broad discretion to determine when severance is warranted, and if severance is ordered, the severed claim becomes an "independent action[ ] that [can] proceed separately." *M.M.M.*, 319 F. Supp. 3d at 295. In determining whether severance is appropriate, courts consider multiple factors, including: (1) "whether the claims arise out of the same transaction or occurrence"; (2) "whether the claims present common questions of law or fact"; (3) "concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes"; (4) "the availability of witnesses and other evidentiary proof"; and (5) "the potential for confusion, undue delay, or prejudice to any party." *Id*.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might

have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Like their authority under Rule 21, district courts "retain broad discretion in balancing the asserted convenience and fairness to the parties" in evaluating whether to transfer venue. *City of W. Palm Beach v. U.S. Army Corps of Eng'rs*, 317 F. Supp. 3d 150, 153 (D.D.C. 2018). In deciding a motion to transfer under § 1404(a), a court must first determine whether the transferee district is one where the action "might have been brought," and then must balance the private and public interests involved in the proposed transfer. *Id.*

Severance and transfer of the claims concerning post-judgment attachment and execution is warranted. The factors that courts use to evaluate a request for severance each support the relief requested by Plaintiffs. First, Plaintiffs' attachment claims arise out of the same transaction or occurrence as the *Benson* action because both seek attachment in aid of execution under § 201 of the Terrorism Risk Insurance Act against precisely the same blocked assets, specifically, the frozen cryptocurrency assets held in the two TRON wallet addresses identified by OFAC on Bank Markazi's SDN listing. Second, Plaintiffs' claims and the *Benson* action present common questions, including whether the cryptocurrency assets are "blocked assets" under TRIA § 201(d)(2)(A); whether Tether, as garnishee, has possession, custody, or control over the assets; and whether Bank Markazi is an agency or instrumentality of a terrorist party. Third, and most critically, severance and transfer would advance judicial economy, avoid multiplicity of litigation, and promote the orderly and efficient resolution of the competing attachment claims. Severance would advance judicial economy by consolidating competing claims to the same property before a single tribunal and would avoid the potential for conflicting rulings over the attached assets. Fourth, the availability of witnesses and evidentiary proof favors severance and transfer because such evidence is not uniquely located in this District. The evidence relevant to the attachment

4

claim is documentary and available in any forum. Finally, severance would not result in confusion, undue delay, or prejudice to any party, and would, in fact, mitigate prejudice to Plaintiffs. Severance and transfer preserves Plaintiffs' writ while moving the dispute to the forum exercising jurisdiction over the *res.* The equities are particularly compelling given the circumstances of this case. Plaintiffs diligently sought relief in this Court upon learning that Iranian cryptocurrency assets had been frozen and could not have known about the *Benson* action because it was filed under seal.

Having established that severance is warranted under Rule 21, this Court can and should transfer the writ to the Southern District of New York under 28 U.S.C. § 1404(a), because the statutory requirements are met and "considerations of convenience and the interest of justice weigh in favor of transfer." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). In deciding a motion to transfer under § 1404(a), a court must first determine whether the transferee district is one where the action "might have been brought," and then must balance the interests involved in the proposed transfer. *W. Palm Beach*, 317 F. Supp. 3d at 153.

Here, the action "might have been brought" in the Southern District of New York because the *Benson* Parties assert—and for purposes of this argument, Plaintiffs assume—that the Southern District of New York has jurisdiction over the attached property.

In addition, the "interests of justice" decisively favors transfer here. Transfer preserves Plaintiffs' writ, protects their potential priority, and allows the action to proceed in the forum that Defendants contend has jurisdiction over the *res*. Vacatur, by contrast, would extinguish Plaintiffs' writ and risk forfeiting their priority position. This would be a particularly inequitable result given Plaintiffs' diligence in pursuing relief in this Court and the fact that the *Benson* proceeding was filed under seal, which Plaintiffs could not have known about.

5

II.     **Alternatively, This Court Should Effectively Stay this Case Until Plaintiffs Have the Opportunity to Challenge the Other Claimants in the Southern District of New York.**

Should the Court decline to sever and transfer the writ, Plaintiffs respectfully request, in the alternative, that the Court stay these proceedings—specifically, by extending the time for Plaintiffs to file their application for judgment—pursuant to D.C. Superior Court Civil Rule 69-I(e)(4). Rule 69-I(e) provides that applications for judgment must be filed within specified time periods or "within a later time authorized by the court on a motion made within the applicable period." D.C. Super. Ct. Civ. R. 69-I(e)(4). This provision grants the Court discretion to extend the filing deadline where circumstances warrant.

Here, good cause exists to stay these proceedings until after Plaintiffs have had the opportunity to challenge the *Benson* Parties' attachment in the Southern District of New York and that challenge has been resolved by that court. The applicable deadlines under Rule 69-I should be tolled—through an order authorizing Plaintiffs to later file an application for judgment pursuant to Rule 69-I(e)—to prevent the writ from being extinguished by the mechanical operation of procedural deadlines while that challenge is pending. To the extent that the Southern District of New York rules against the *Benson* Parties and any other claimants, it would be appropriate for this proceeding to resume. Extension of the application for judgment deadline would ensure that Plaintiffs' attachment rights and priority remain intact until such time that Plaintiffs can enforce their writ.

III.    **The "Prior Exclusive Jurisdiction" Doctrine Does Not Preclude a Transfer or Stay.**

The *Benson* Parties imply in their notice that, under the prior jurisdiction doctrine, this Court lacked jurisdiction to issue the writ and, thus, must vacate or quash it. That is incorrect. The prior jurisdiction doctrine is a prudential doctrine in which courts that *have* jurisdiction nonetheless

6

decline to exercise it. Accordingly, the writ need not be vacated, and the Court may grant the relief requested by Plaintiffs.

The Supreme Court has consistently described the judge-made prior exclusive jurisdiction doctrine as a rule grounded in both comity and practical necessity. In *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939), the Court explained that the doctrine is "necessary to the harmonious cooperation of federal and state tribunals." *Id.* at 466. Similarly, in *Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189 (1935), the Court framed the doctrine as existing "[t]o avoid unseemly and disastrous conflicts in the administration of our dual judicial system" and "to protect the judicial processes of the court first assuming jurisdiction." *Id.* at 195. The doctrine's animating concern is the practical problem of preventing two courts from simultaneously exercising dominion over the same *res*.

Consistent with this understanding, courts have recognized that the doctrine is prudential and does not operate as a constitutional restraint on jurisdiction. *See, e.g.*, *Sexton v. NDEX W., LLC*, 713 F.3d 533, 536 n.6 (9th Cir. 2013) ("[T]he doctrine of prior exclusive jurisdiction is now best understood as a prudential (although mandatory) common law rule of judicial abstention."); *Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999) ("[B]y invoking the importance of 'harmonious cooperation' between the federal and state courts, the Court [in *Princess Lida*] indicated that the doctrine it was expounding was a rule of comity or abstention, rather than one of subject matter jurisdiction."). As the Ninth Circuit has explained, the Supreme Court has "clarified that court-promulgated rules are not jurisdictional" and "'[o]nly Congress may determine a lower federal court's subject-matter jurisdiction,'" so the doctrine cannot be treated as a limitation on Article III power. *Sexton*, 713 F.3d at 536 n.6 (internal citations omitted).

7

The D.C. Circuit's analysis in *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632 (D.C. Cir. 2025), reinforces this understanding. The Court held that the prior exclusive jurisdiction doctrine "is 'based upon necessity'" and therefore "does not apply 'where the necessity, actual or potential, does not exist.'" *Id.* at 642 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 235 (1922)). A doctrine that turns on the presence or absence of practical "necessity" is, by definition, a prudential rule that demands a remedy calibrated to the problem it seeks to avert. The doctrine exists to prevent "unseemly conflicts between courts whose jurisdiction embraces the same subject," *id.* at 642-43 (quoting *Kline*, 260 U.S. at 231), not to limit the scope of federal judicial power.

The Supreme Court's reasoning in *Penn General* confirms the doctrine's inherently remedial scope. There, a suit for receivership of an insurance company had been filed in federal court shortly before a suit for liquidation of corporation was filed in state court. The Court instructed that the jurisdiction is exclusive, "only so far as its exercise is necessary for appropriate control and disposition of the property." *Penn General*, 294 U.S. at 198. Although the federal court had acquired jurisdiction, the state court was "not without power" to designate the state insurance commissioner as the authority to control the property for the state "whenever that could lawfully be done." *Id.* The exclusive jurisdiction "does not extend beyond the purpose for which it is allowed, to enable the court to exercise it appropriately and to avoid unseemly conflicts." *Id.* Critically, the court without jurisdiction "does not thereby lose its power to make orders which do not conflict with the authority of the court having jurisdiction." *Id.*

Therefore, even if this Court were to conclude that the prior exclusive jurisdiction doctrine applies here, it does not compel the *Benson* Parties' requested remedy of vacatur. The *Benson* Parties ask this Court to vacate its Order and quash the writ of attachment entirely. *See* Notice at

8

4. But where exclusivity of prior jurisdiction applies "only so far as its exercise is necessary for the appropriate control and disposition of the property," *Penn General*, 294 U.S. at 198, the Court should not vacate the writ where it is not needed to achieve the purposes of the doctrine. The doctrine exists to prevent conflicting dispositions of a single *res* by multiple courts. That objective can be achieved by transferring the writ or staying further proceedings on the writ in this Court pending a determination by the Southern District of New York on the continuing validity of their or any other claimants' execution proceedings.

The D.C. Circuit's analysis in *Estate of Levin*, 156 F.4th 632, underscores this conclusion. There, the Court held that the prior exclusive jurisdiction doctrine "does not prevent a single court from presiding over multiple suits involving the same property." *Id.* at 643. "[L]ater suits merely ask the court to consider further claims against it." *Id.* If the writ is transferred to the Southern District of New York rather than quashed, the court that the *Benson* Parties contend has prior jurisdiction would oversee *both* writs. There would be no conflict between courts, because only one court would be exercising jurisdiction over the *res*. The Southern District of New York could then adjudicate priority between the competing writs on the merits, in an orderly proceeding before a single tribunal. Transfer thus vindicates every interest the prior exclusive jurisdiction doctrine is designed to protect.

Indeed, this is precisely the outcome the *Benson* Parties themselves apparently envision. Their Notice expressly states that "[t]he DiBenedetto Plaintiffs must seek relief, if at all, from the U.S. District Court for the Southern District of New York." Notice at 4. Transferring the writ accomplishes exactly that. Vacatur, by contrast, would extinguish Plaintiffs' writ entirely and prejudice the DiBenedetto Plaintiffs by eliminating any associated priority. This Court should decline that invitation.

Likewise, tolling the deadlines in the post-judgment proceedings in this Court would not result in conflicting dispositions by multiple courts. It would merely preserve Plaintiffs' ability to pursue their rights at the appropriate time.

## IV. CONCLUSION

For the foregoing reasons, the Court should decline the *Benson* Parties' invitation to "*sua sponte*" vacate its Order and Plaintiffs' writ. If the Court determines that the U.S. District Court for the Southern District of New York has prior exclusive jurisdiction, the DiBenedetto Plaintiffs respectfully request that the Court either: (i) sever and transfer proceedings concerning their writ to the Southern District of New York; or, alternatively, (ii) stay further proceedings on the writ in this Court pending a determination by the Southern District of New York on the continuing validity of their or any other claimants' execution proceedings.

Dated: June 9, 2026

Respectfully submitted,

By: */s/ Robert A. Braun*

Robert A. Braun (D.C. Bar No. 1023352)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Eighth Floor
Washington, DC 20005
(202) 408-4600
RBraun@cohenmilstein.com

Counsel for Plaintiffs

10