**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DAVID DIBENEDETTO, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:16-cv-2429-TSC |
| IRANIAN MINISTRY OF INFORMATION AND SECURITY, et al., | |
| Defendants. | |

**<u>BENSON PARTIES' REPLY TO PLAINTIFFS' RESPONSE</u>**

The Benson Parties respectfully submit this reply to Plaintiffs' response. ECF No. 71 ("Response"). In that Response, Plaintiffs do not meaningfully dispute that the Southern District of New York ("Southern District") has prior exclusive jurisdiction over the property subject to the writ of attachment that they have sought in this Court (the "Attached Assets"). *Id.* And Plaintiffs do not appear to argue that, *had the Court known* about the prior writ of attachment at the time it decided Plaintiffs' motion, it could or would have granted the writ. Indeed, Plaintiffs do not contend that a later court has the power to issue a writ of attachment as to specific property where a prior court has already done so. Nor could they, because the "the prior exclusive jurisdiction doctrine prevents a court from attaching property already seized by a different court." *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 (D.C. Cir. 2025) (citing *Hagan v. Lucas*, 35 U.S. (10 Pet.) 400, 403 (1836)).

Instead, Plaintiffs argue that regardless of whether the Court had power to issue the writ, now that it has been granted, the Court should not vacate it but either transfer their motion or stay this action until the Benson Parties' case is resolved. *Id.* With respect, neither option is available to the Court. Any remedy but vacating the writ would violate the prior-exclusive-jurisdiction

doctrine's limitation on this Court's authority to have issued the writ in the first place, and creates perverse incentives for disappointed creditors to seek end-runs around the doctrine. Most fundamentally, Plaintiffs' argument that, going forward, a stay or transfer would not "conflict" with the Southern District's prior jurisdiction therefore fails to address the central problem, which is that their writ of attachment *already does* so: in the name of this Court, that writ declares a seizure of the Attached Assets and restrains the garnishee from transferring them, *including to already existing attachment creditors and enforcement officers in the Southern District*. ECF No. 59-1, at 1. The Court should vacate its order granting the writ and quash the writ.

First and foremost, Plaintiffs do not contest that the Southern District of New York has prior exclusive jurisdiction over the Attached Assets. *See generally* Response. Nor could they, as it is undisputed that the Southern District issued a writ of attachment applying to the Attached Assets that had already been levied well before Plaintiffs sought any relief in this Court. *See Benson et al. v. Islamic Republic of Iran*, 26-cv-02327 (S.D.N.Y.) ("*Benson*"), ECF Nos. 35, 52.

Instead of defending the Court's authority to issue the writ when it did so, Plaintiffs propose two alternatives that, in their view, would "avoid[] the possibility of conflicting exercises of jurisdiction while still safeguarding Plaintiffs' rights." Response at 3. **First,** Plaintiffs request that the Court "sever the claims and proceedings concerning post-judgment attachment of and execution on the Tether cryptocurrency from the remainder of this action," and transfer those severed "claims" to the Southern District. *Id.* **Second,** Plaintiffs ask the Court to "stay these proceedings" by "extending the time for Plaintiffs to file their application for judgment," although not, apparently, by extending any of the deadlines applicable to the garnishee under D.C. Superior Court Civil Rule 69-I. *Id.* at 6.

2

Both options are procedurally suspect on their own terms: for example, Plaintiffs cite no case applying Rule 21 to a post-judgment motion under Federal Rule of 69(a), nor do they explain why the Federal Rules can or should be interpreted to permit the procedure they intend—move, sever, and transfer to a new district—when a judgment creditor in Plaintiffs' position may instead follow the ordinary procedure of registering their judgment in the new district (and proceeding under Rule 69(a) there, governed by the local forum's law on execution), or (in a TRIA case) bringing a freestanding TRIA claim against an alleged agency or instrumentality. And as noted, Plaintiffs' proposed "stay" is really a one-sided extension request that would buy them time to file an application but would (apparently) not affect the other deadlines applicable to other parties under Rule 69-I.

More importantly, both options suffer from a deeper problem, which is that they both assume that this Court *had* the authority to issue the writ when it did so—but it did not. "When a district court exercises jurisdiction over a piece of property"—as it is undisputed that the Southern District did over the Attached Assets no later than April 28—"it precludes other courts from exercising concurrent jurisdiction over that *res*." *Est. of Levin v. Wells Fargo Bank, N.A.*, No. CV 21-420 (JEB), 2026 WL 879176, at *6 (D.D.C. Mar. 31, 2026). As Judge Boasberg explained in *Levin*, once the first Court has exercised jurisdiction over a res, no "other party" can even "*assert*[] a claim" to the property "anywhere else." *Id.* at *5 (emphasis added). Notably, the *Levin* Court considered this issue in connection with a request for transfer, and so the relevant question was whether the movants' motions for writs of attachment "might have been *brought*" in the District of South Dakota. *Id.* at *4 (quoting 28 U.S.C. § 1404(a)) (emphasis added). As Plaintiffs acknowledge, here that inquiry turns on whether the proposed District "has jurisdiction over the attached property." Response at 5. In *Levin*, the answer with respect to the proposed transferee

3

District of South Dakota was "no," because this District had acquired prior exclusive jurisdiction due to the government's earlier-filed civil forfeiture proceeding. *Est. of Levin*, 2026 WL 879176, at \*5-6. Here, however, the same logic dictates the opposite result: because the Southern District had already acquired jurisdiction over the Attached Assets, Plaintiffs motion for attachment could not have been "brought" in this District. *Id.* at \*4. Stated differently, this District lacked "jurisdiction over the attached property" at the time Plaintiffs sought, and the Court granted, Plaintiffs' writ. Response at 5.

This rule is well established in Supreme Court and D.C. Circuit precedent. Because "only one court at a time may exercise jurisdiction over particular property," once the first court has done so the second court cannot. *Est. of Levin*, 156 F.4th at 642. As the Supreme Court explained in *Princess Lida* (a case that has lent its name, in some jurisdictions, to the prior exclusive jurisdiction doctrine), once a court has "acquired" quasi in rem jurisdiction with respect to certain property, "the jurisdiction acquired . . . is exclusive," and a later-in-time court "is without jurisdiction of [a] suit subsequently brought for the same relief." *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 467–68 (1939).

Nor does it matter, as Plaintiffs suggest, that the prior-exclusive-jurisdiction doctrine may not have its roots in "subject matter jurisdiction" *per se*. Response at 6-9. Plaintiffs' own cited case confirms that, even if it is understood as having "prudential" roots, the doctrine is nonetheless "mandatory" where it applies. *See* Response at 7 (quoting *Sexton v. NDEX W., LLC*, 713 F.3d 533, 536 n.6 (9th Cir. 2013)). And although Plaintiffs' quotation from *Carvel* omits the relevant language, *Carvel* holds the same. *See Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999) ("All this is not to say that the *Princess Lida* doctrine may be lightly disregarded. Although it is a principle of comity, in the nature of an abstention doctrine, the *Princess Lida* rule

4

is *no less binding on federal courts*. However, as it is not strictly speaking a rule of subject matter jurisdiction, 28 U.S.C. § 1447(d) . . . does not prohibit appellate review of a remand order made pursuant to the rule of *Princess Lida*.") (emphasis added). Meanwhile, the D.C. Circuit in *Levin* speaks in terms of "jurisdiction"—at least in the sense of a court's power over the subject property. *See Est. of Levin*, 156 F.4th at 642 (explaining that "only one court at a time may exercise jurisdiction over particular property").

Further, Plaintiffs' discussion of the *Levin* and *Penn General* opinions confuses questions about the *boundaries* of the doctrine, which must be evaluated according to the doctrine's purposes, with questions about what a court must do in a scenario within the doctrine's already-established boundaries. *See* Response at 8–9.

Citing *Levin*, Plaintiffs argue that "[a] doctrine that turns on the presence or absence of practical 'necessity' is, by definition, a prudential rule that demands a remedy calibrated to the problem it seeks to avert." Response at 8. And citing *Penn General*, Plaintiffs argue that the first-acquiring court's jurisdiction is "exclusive only so far as its exercise is necessary for appropriate control and disposition of the property." *Id.* (quotation omitted). Courts have appropriately limited the scope of the prior-exclusive-jurisdiction doctrine consistent with those principles. But those questions are not at issue here, because *this* scenario—competing attachments of the same property—is within the heartland of the doctrine's already-established boundaries, meaning that a later-in-time court is without discretion to consider whether it is appropriate to order a second, competing attachment of the same property. The D.C. Circuit could not have been clearer in *Levin* that "the prior exclusive jurisdiction doctrine prevents a court from attaching property already seized by a different court," as Plaintiffs asked this Court to do here. 156 F.4th at 643 (citing *Hagan*, 35 U.S. (10 Pet.) at 403); *see id.* ("[T]he first levy, whether it were made under the federal

or state authority, withdraws the property from the reach of the process of the other.") (quoting *Hagan*, 35 U.S. (10 Pet.) at 403)); *Est. of Levin*, 2026 WL 879176, at *5-6 (holding that later-in-time creditors could not even *seek* attachment in a second court of property already subject to the jurisdiction of the first court). Plaintiffs cite no case suggesting that a later-in-time court is free to attach property that an earlier-in-time court has already attached. Nor could they, because *Levin* and *Hagan* hold precisely the opposite.

Nor do Plaintiffs cite any case suggesting that a court is free to re-evaluate the wisdom of applying the doctrine case-by-case where, as here, it applies to an attempt to attach property already attached in another court. In fact, *Penn General* itself illustrates why Plaintiffs' position is incorrect. There, the Supreme Court permitted a later-in-time state court to "designate the insurance commissioner as the vehicle of the state authority to control the property whenever that could lawfully be done," holding that the mere "designat[ion]" of the commissioner fell outside the boundaries of the doctrine. *Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 198 (1935). But the insurance commissioner could not *exercise* any authority over the property: accordingly, applying the doctrine, the Court vacated the portion of the state-court order that "directed the insurance commissioner to take possession of the business and property of the company" and "enjoined the company from surrendering its books, records, and assets to any person other than the commissioner, and enjoined others from taking possession of them." *Id.* at 199. A writ of attachment—including Plaintiffs' writ—falls into that latter category of orders that direct (or operate as) seizure of the property. *See* ECF No. 59-1 at 1 (Plaintiffs' writ of attachment declaring, in the name of this Court, that "any . . . property . . . of the above named defendant(s), *are seized* . . . and you [i.e., the garnishee] *are required to hold it and not to pay or surrender it to the defendant(s) or to anyone else without an order from this court*.") (emphasis

added). Thus, Plaintiffs' purported writ is no mere "appointment" of an officer to "control the property whenever that could lawfully be done"; it is an order purporting to seize and restrain property that has already been attached (*i.e.*, seized and restrained) by another Court. *See Benson*, ECF No. 35. Unsurprisingly, because a valid writ of attachment *does* effect a seizure of the attached property, a writ of attachment is precisely the kind of conflicting order that a later-in-time court may not issue once an earlier court has assumed exclusive jurisdiction. *See, e.g.*, *Est. of Levin*, 156 F.4th at 643; *Est. of Levin*, 2026 WL 879176, at *5-6.

Finally, even if they were permissible, Plaintiffs' proposed workarounds would create disastrous incentives for later-in-time claimants who, like Plaintiffs in this case, were not the first to identify and seize particular property. Plaintiffs' bottom-line position is that because the writ has already issued, they should be entitled to keep it and "preserve" the rights it confers, including "protect[ing] their potential priority," even if the Court concludes that the prior exclusive jurisdiction doctrine barred the writ's issuance at the time it issued. Response at 5. If adopted, that position would create an obvious incentive for later-in-time claimants to end-run the first court to acquire jurisdiction, knowing that if they happen to eke out a writ from a court unaware of the first court's exclusive jurisdiction, they will have a chance to keep it. Worse yet, claimants would have an incentive to fail to disclose the first court's jurisdiction to the second court. Even if the prior exclusive jurisdiction doctrine permitted it, that regime would make little sense.[1]

---

[1] Plaintiffs complain that the *Benson* action was initially filed under seal, such that Plaintiffs could not have known about the Benson Parties' writ. Response at 2, 5. For the reasons discussed above, the Southern District's prior exclusive jurisdiction over the Attached Assets does not depend on whether later claimants, or the later-in-time court, know about it. And regardless, the garnishee *did* know about it, having been served with the Southern District's writ when the Marshal levied it on April 29. *Benson*, ECF No. 52. Further, and in any event, this is not a case in which the later-in-time claimants lacked knowledge of the earlier writ; as set forth in the Benson Parties' Notice, the Benson Parties filed notices in two other cases pending in this District on May 21, alerting Plaintiffs' counsel to the existence of the writ. ECF No. 68, at 2 n.1. And the *Benson* Action was

The Court should vacate its order granting a writ of attachment and should quash any writ issued pursuant to that order.

Dated: June 12, 2026

Respectfully submitted,

/s/ Aaron E. Nathan

Michael J. Gottlieb (D.C. Bar No. 974960)
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3111
mgottlieb@willkie.com

Nicholas Reddick (D.C. Bar. No. 1670683)
Willkie Farr & Gallagher LLP
333 Bush St.
San Francisco, CA 94104
(415) 858-7400
nreddick@willkie.com

Lee S. Wolosky (D.C. Bar No. 1632942)
Aaron E. Nathan (D.C. Bar No. 1047269)
Willkie Farr & Gallagher LLP
787 Seventh Ave
New York, NY 10019
(212) 728-8000
lwolosky@willkie.com
anathan@willkie.com

*Counsel for the Benson Parties*

---

unsealed on May 26. *Benson*, ECF No. 15. But even though their motion was still pending, Plaintiffs did not bring that information to the Court's attention. Further, Plaintiffs' appeal to their own "diligence" in seeking relief in this Court, Response at 5. Any diligence Plaintiffs may have exhibited cannot change the fact that the Southern District had prior exclusive jurisdiction. But it is not clear what Plaintiffs mean by "diligence," other than the fact that they were unaware of the *Benson* writ at the time they filed their initial motion on May 14, already weeks after OFAC's designation of the Attached Assets. Of course, by that time, the Benson Parties had long since obtained and levied their writ (on April 29). And on any accounting, there were 11 days (beginning on May 21) during which Plaintiffs' counsel were on notice of the Southern District's prior exclusive jurisdiction but chose not to inform this Court. Even assuming that silence was entirely appropriate, it does not constitute "diligence" worthy of a reward.

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I caused a true and correct copy of the foregoing to be served by electronic means, *via* the Court's ECF system, on all counsel registered to receive electronic notices.

/s/ Aaron E. Nathan

Michael J. Gottlieb (D.C. Bar No. 974960)
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3111
mgottlieb@willkie.com

Nicholas Reddick (D.C. Bar. No. 1670683)
Willkie Farr & Gallagher LLP
333 Bush St.
San Francisco, CA 94104
(415) 858-7400
nreddick@willkie.com

Lee S. Wolosky (D.C. Bar No. 1632942)
Aaron E. Nathan (D.C. Bar No. 1047269)
Willkie Farr & Gallagher LLP
787 Seventh Ave
New York, NY 10019
(212) 728-8000
lwolosky@willkie.com
anathan@willkie.com

*Counsel for the Benson Parties*

9